[Civ. No. 1295.    Third Appellate District.—November 5, 1914.]

GEORGE S. MONTGOMERY, Plaintiff and Respondent, v. WALTER E. DORN, and CHARLES A. FITCH, Defendants and Respondents; A. J. RANKIN, Defendant and Appellant.

CONTRACTS—AGREEMENT TO PAY NOTE OF THIRD PARTY—EXECUTION BY AGENT—PLEADING AND FINDINGS—WHEN NO VARIANCE BETWEEN.— Where a written agreement is executed by an agent in his own name for his undisclosed principal, in which he promises, in consideration of the transfer to him of certain corporation stock, to pay certain claims of third parties, among them the promissory note in suit, in an action on the agreement there is no variance between an allegation of the complaint that both the agent and the principal expressly agreed in writing, for a valuable consideration moving to each of them, to pay said promissory note, and a finding that the principal alone made such promise, it appearing from the evidence, and the court finding, that the agent was in fact acting for his undisclosed principal.

ID.—PLEADING—PARTIES—PRINCIPAL AND AGENT—JOINDER.—The general rule is that, where a contract is made by an agent within the scope of his employment, both the agent and the undisclosed principal, when discovered, are liable on the contract and may be joined as defendants.

ID.—PLEADING—AGENCY NEED NOT BE ALLEGED.—It is not necessary in such a case to aver the fact of agency, it being sufficient to charge the act as that of the principal, without disclosing the fact of the agency; and where the proof is that such acts were done or knowledge obtained by the principal's authorized agent there is no variance.

ID.—EVIDENCE—ADMISSIBILITY OF NOTE AND CONTRACT.—In such a case evidence offered by the plaintiff as to the execution and delivery of the note, as to the pledging of shares of corporation stock, and as to the contract for the sale of certain of said shares, is admissible, although the appellant's name did not appear on the note or in the contract, where the testimony later connected the appellant with the transaction.

ID.—EVIDENCE—RECEIPT OF BENEFITS—ADMISSIBILITY OF TESTIMONY OF AGENT.—In such a case it was competent to show who received the benefits of the transaction, and also to show by the agent for whom he was acting.

ID.—EVIDENCE—AGENT COMPETENT TO TESTIFY TO AGENCY.—While the statements or admissions of one not as a witness, that in a certain transaction he acted as agent for another, are not competent to prove

the fact of agency, yet if he is called as a witness, his testimony not only that he acted as agent of the party, but as to the fact of agency, where it rests in parol, is as competent as that of any other witness.

ID.—CONNECTION OF APPELLANT WITH TRANSACTION—LIABILITY OF APPELLANT.—In such a case the contention that the liability rested upon a certain company, instead of upon appellant, cannot be sustained, where the agent testified that to the best of his knowledge, appellant was a member of said company and that he represented the company in the negotiations, that appellant was the only person disclosed as principal, that he received the benefits and profits of the contract and that the agent was acting for appellant throughout the transaction and that the latter became the owner of the stock "in pursuance of the contract," and where it further appeared that appellant was a witness in his own behalf and neither in his answer, nor in his testimony claimed that said company was a party to the transaction, and the testimony of two other witnesses showed that the transaction was for appellant's individual benefit.

ID.—VALIDITY OF CONTRACT.—In such a case, inasmuch as the agreement was one not required to be in writing, it was not essential that the agent's authority to act should be in writing, and section 2309 of the Civil Code has no application.

ID.—AUTHORITY OF AGENT.—In such a case the claim that the agent's authority being "expressed in general terms" he had no authority "to act in his own name," under section 2322 of the Civil Code, cannot be maintained, where the evidence shows that the principal did not desire to buy the stock in his own name and requested the agent to execute the contract in the latter's name.

ID.—PROMISSORY NOTE—NONPAYMENT—EVIDENCE.—The production of a promissory note showing no indorsement of payment is *prima facie* evidence of nonpayment.

ID.—CONTRACT TO PAY CLAIMS OF THIRD PARTY—RIGHT OF THIRD PARTY TO ENFORCE.—In such a case where the appellant agreed, in consideration of the transfer of certain corporation stock to him, to pay certain claims of third parties, among them the promissory note in suit, his promise is one made for the benefit of said third parties, which may be enforced by the latter.

APPEAL from a judgment of the Superior Court of Alameda County and from an order refusing a new trial. N. D. Arnot, Judge presiding.

The facts are stated in the opinion of the court.

Sullivan & Sullivan and Theo. J. Roche, for Appellant.

R. H. Cross, for Respondent, George S. Montgomery.

A. F. St. Sure, and L. W. Lovey, for Respondent, Walter E. Dorn.

CHIPMAN, P. J.—In plaintiff's amended complaint it is alleged that defendant Fitch executed his promissory note to plaintiff, September 26, 1908, for the sum of one thousand three hundred and sixty dollars, payable ninety days after date, with interest after maturity, secured by certain shares of Home Circle Cash Store & Mail Order House, a corporation; that, after the execution of said promissory note and prior to the commencement of the action, defendants Dorn and Rankin "expressly and in writing undertook, agreed and promised the said Chas. A. Fitch, for a good and valuable consideration moving to them, and to each of them, to pay the said promissory note and the whole thereof for the express benefit of plaintiff herein and said undertaking, agreement and promise has at no time been rescinded."

The prayer is for judgment against defendants for one thousand three hundred and sixty dollars, with interest at seven per cent after December 26, 1908, and that said pledged property be sold and the proceeds applied to the payment of said indebtedness and for general relief.

Defendant Rankin interposed a general and special demurrer to the amended complaint which, being overruled, he answered by expressly denying its averments. Defendant Dorn answered and, on information, denied most of the averments of plaintiff's amended complaint and, by way of answer thereto, set forth what he alleged to be the facts in the transaction, to wit: that, on or about September 7, 1909, as agent and attorney of Rankin and not otherwise, he entered into a written agreement (plaintiff's Exhibit 3) to purchase for Rankin from defendant Fitch and one H. McDonald certain shares of said corporation, referred to in plaintiff's complaint, and in consideration of the transfer of said stock by Fitch and McDonald to Rankin, the said Rankin promised and agreed to pay for said shares certain cash to Fitch and to liquidate certain designated claims and among them the said claim of plaintiff; that in pursuance of said contract said shares were transferred to Rankin and Rankin paid to Fitch the amount agreed, to wit, one hundred and fifty dollars, and one other claim, but did not pay certain other claims nor did he pay the said claim of plaintiff; that he, Dorn, acted solely

as agent and attorney of Rankin and so informed defendant
Fitch and said McDonald and "that said defendant A. J.
Rankin was the principal in said contract and that the de-
fendant, Walter E. Dorn, was but the agent and attorney for
said party"; that in pursuance of said contract said Rankin
became the sole owner of said stock of said corporation.

The court gave judgment for plaintiff against defendants
Fitch and Rankin for the sum of one thousand three hundred
and sixty dollars and interest at seven per cent from December
29, 1908, and directed that the said shares be sold and the
proceeds applied to the payment of said amount and that the
action be dismissed as to defendant Dorn.  Defendant Rankin
alone appeals from the judgment and from the order denying
his motion for a new trial.

Upon sufficient evidence the court found that the averments
of the amended complaint were true and that the averments
of defendant Rankin's answer were not true.  Specifically,
and on sufficient evidence, it found that Fitch executed the
promissory note as alleged and pledged the said shares as
alleged and as testified to by defendant Fitch and that no part
of said promissory note has been paid; that the transaction by
which defendant Rankin became liable for the payment of said
promissory note was substantially as alleged in defendant
Dorn's answer and as testified to by him; that Dorn was act-
ing solely as Rankin's agent and attorney and by his direction
and with his knowledge and consent and that, pursuant to
said written agreement entered into by Dorn, Rankin paid
certain of the claims therein agreed by him to be paid but
that he did not pay plaintiff's said claim; that Dorn re-
ceived no profits or benefits from said transaction and that
"defendant A. J. Rankin received all the benefits and profits
accruing from said contract, and was and is the principal
thereunder.  That defendant, A. J. Rankin, received valuable
and sufficient considerations for the execution of said contract
of October 7, 1909, as hereinafter set forth."  Finding num-
bered 7 is as follows: "That defendant A. J. Rankin, after the
said execution and delivery of said promissory note, . . . to
wit, on or about October 7, 1909, expressly and in writing,
undertook, agreed and promised the said Charles A. Fitch for
a good and valuable consideration moving to him, to pay the
said promissory note owing from said C. A. Fitch to plaintiff
and the whole thereof for the express benefit of plaintiff

herein, and said undertaking, agreement and promise has at no time been rescinded.''

1. Appellant's first proposition is that there is a fatal variance between paragraph IV of the complaint and the findings thereon,—namely, finding 7. This paragraph stated that Walter E. Dorn and A. J. Rankin ''expressly and in writing undertook, agreed and promised the said Charles A. Fitch for a good and valuable consideration moving to them, and to each of them, to pay said promissory note and the whole thereof, for the express benefit of the plaintiff.'' The claim is that ''both Dorn and Rankin undertook in writing to pay said promissory note and that both received consideration therefor, while the findings, based upon the evidence as it was viewed by the court, are that A. J. Rankin alone 'expressly and in writing undertook, agreed and promised' to pay said promissory note.'' (Citing *People* v. *Cummings*, 117 Cal. 497, [49 Pac. 576].) In that case the indictment charged that the note was obtained by false pretenses describing the notes as having been executed by one person as maker, but the proofs showed that the note was executed by two persons as joint makers, and the variance was held material. No such case appears here. It was not alleged that Dorn and Rankin jointly executed the agreement and it was not found that Rankin ''*alone*'' entered into the agreement, but rather that he, through his agent, Dorn, entered into it.

Dorn was, on the face of the agreement, a principal while in fact he was the agent of the undisclosed principal. ''The general rule is that where the contract is made by an agent within the scope of his employment, both the agent and the undisclosed principal, when discovered, are liable on the contract, and may be joined as defendants thereon.'' (31 Cyc., p. 1624.) It was not necessary to aver the fact of agency, ''it being sufficient to charge the act as that of the principal, without disclosing the fact of the agency'' (Id., p. 1626) ; and where ''the proof is that such acts were done or knowledge obtained by his authorized agent, there is no variance.'' (Id., p. 1638.) Rankin was shown by the evidence to have been the undisclosed principal and was properly joined with Dorn as party defendant and as to Rankin a good cause of action was stated, Rankin was, therefore, not prejudiced, whether or not a judgment went against Dorn. (*Allen* v. *Globe. Grain & Milling Co.*, 156 Cal. 286, 291, [104 Pac. 305].)

2. In making his proofs plaintiff introduced testimony as to the execution and delivery of the note; also as to the pledging of the shares of the corporation; also as to the contract for the sale of certain of these shares, to all of which defendant Rankin objected on the ground that his name did not appear on the note or in the contract and that each transaction was *res inter alios acta.* The testimony was relevant when offered as to the other defendants and the testimony later along in the trial fully connected Rankin with the transactions. We discover no error in admitting this or any of the evidence offered. It was competent to show who received the benefits of the transaction and it was competent to show by Dorn for whom he was acting. "While the statements or admissions of one not as a witness, that in a certain transaction he acted as agent for another, are not competent to prove the fact of agency, yet if he is called as a witness, his testimony not only that he acted as the agent of the party, but as to the fact of agency, where it rests in parol, is as competent as that of any other witness." (*McRae* v. *Argonaut Land & Development Co.,* 6 Cal. Unrep. 145, [54 Pac. 743]; Mechem on Agency, sec. 101.)

3. Some further points are presented on motion for nonsuit which will be briefly noticed. It is claimed that the evidence showed that the contract was the obligation of A. J. Rankin & Company and not that of Rankin. Dorn testified that to the best of his knowledge Rankin was a member of the said company, and that he represented the company in the negotiations. The evidence was that Rankin was the only person disclosed as principal. Dorn testified that Rankin received the benefits and profits of the contract and that he was acting for Rankin throughout the transaction and that Rankin became the owner of the stock "in pursuance of the contract." Rankin was a witness in his own behalf. Neither in his answer nor in his testimony did he claim that his firm was a party to the transaction. The testimony of defendant Fitch as well as that of Dorn shows that the transaction was for Rankin's individual benefit.

Appellant further contends that the contract was invalid because it was an agreement to pay the debt of another and was not signed by Rankin, and that Dorn had no authority in writing to act for Rankin. (Citing Civ. Code, secs. 1624 and 2309.) "The promise of a transferee of property, made in consideration of the transfer, to assume and discharge an

indebtedness of the transferrer to a third person, is obligatory on him although resting in parol.'' (20 Cyc. 174; *Sacramento Lumber Co.* v. *Wagner,* 67 Cal. 293, [7 Pac. 705]; *Tevis* v. *Savage,* 130 Cal. 411, [62 Pac. 611]; *Doe* v. *Allen,* 1 Cal. App. 560, [82 Pac. 568].) Inasmuch as the agreement was one not required to be in writing, it was not essential that Dorn's authority to act for Rankin should be in writing and section 2309 of the Civil Code has no application.

It is also claimed that Dorn's authority was ''expressed in general terms'' and hence he had no authority ''to act in his own name,'' citing section 2322 of the Civil Code. Dorn was asked by appellant's attorney to state why he had not presented the contract to Rankin to be signed. He answered: ''For the reason that Mr. Rankin did not want to buy the stock in his own name, as he said to me, and he said he didn't want to buy it in his own name for the reason that he being in the grocery business, the creditors of the Home Circle Cash Store were so numerous and it was Mr. Rankin's opinion if they knew he was the purchaser they would insist on being paid in full; and it was his idea that by purchasing it in my name, I would be able to make a settlement with the creditors for a less amount than 100% on the dollar.'' He testified directly that Rankin requested him, Dorn, to execute the contract in his own name.

4. The production of the promissory note showing no indorsement of payment was *prima facie* evidence of nonpayment. (*Melone* v. *Ruffino,* 129 Cal. 514, [79 Am. St. Rep. 127, 62 Pac. 93]; *Hurley* v. *Ryan,* 137 Cal. 461, [70 Pac. 292]; *Stuart* v. *Lord,* 138 Cal. 672, [72 Pac. 142].)

5. Finally, it is contended that the contract, plaintiff's Exhibit 3, is not the contract contemplated by section 1559 of the Civil Code, which provides as follows: ''A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.''

Dorn was the party of the second part in the contract and by its terms it was agreed: ''That the party of the second part shall assume and pay or liquidate the following claims against the parties of the first part (C. A. Fitch and A. H. McDonald) or either of them, to wit: The claim of A. J. Rankin Company, and his assignee F. B. O'Reilley, for the sum of $2,600.00 or thereabouts. The claim of Morris Bros. Company for the sum of $350.00 or thereabouts. The claim

of George S. Montgomery, for the sum of $1,360.00, or thereabouts, together with interest. Pay to C. A. Fitch between $100.00 and $150.00 immediately upon a transfer of all of the stock." There was evidence and the court found that Rankin, in accordance with said contract paid Fitch the sum of $150.00 and Morris Bros. Company $350.00, but did not pay plaintiff as by said contract he agreed to do. The contention of appellant is that plaintiff, Montgomery, was to receive under this contract "nothing more than a mere incidental benefit" and that, applying the recognized definition of the word "expressly," the conclusion "is inescapable that the same (the contract) was never intended for the 'express benefit' of plaintiff Montgomery in this action and is therefore not within the provisions of section 1559 of the Civil Code." Cases are cited, of which *Chung Kee* v. *Davidson,* 73 Cal. 522, [15 Pac. 100], is an example, where the court said: "The general rule applicable to cases of this kind is, that when two persons, for a consideration sufficient as between themselves, covenant to do some act which, if done, would incidentally result in the benefit of a mere stranger, that stranger has not a right to enforce the covenant, although one of the contracting parties might enforce its agreement with the other." Is this such a case? In our opinion the contract cannot be so construed. The contract reads: "That the parties of the first part (Fitch and McDonald) sell, and the party of second part (Dorn) buys (describing the shares of stock) upon the following terms and conditions, to wit: That the party of the second part shall assume and pay," etc., as quoted above.

In addition to the promise to pay the claims mentioned, Dorn (Rankin) was to give Fitch a position in case Dorn (Rankin) succeeded in reorganizing the corporation whose stock he was buying and Fitch was to receive some of the shares of this new corporation if organized. There is nothing in the contract, however, that gives the slightest ground for the contention that plaintiff's interest in it was merely incidental. The payment of the claims mentioned was the chief consideration for the transfer of the stock, and when we substitute Rankin for Dorn, as the evidence fully warrants our doing, it seems to us very clear that the contract was made "expressly for the benefit" of plaintiff. Dorn testified that in making the sale of the stock Fitch insisted that certain claims against him should be paid, among them the claim

25 Cal. App.—43

of Montgomery evidenced by the note in suit. Hence the provision in the contract for the payment of this claim. Dorn delivered the contract to Rankin who must be presumed to have known what his obligations were under it. He discharged part of them pursuant to the contract and we can see no reason for holding that he should not discharge the one here involved. Many cases might be cited to show that section 1559 is not confined in its application to the case of a sole or primary beneficiary. (*Washer* v. *Independent Mining Dev. Co.,* 142 Cal. 702, [76 Pac. 654] ; *Bacon* v. *Davis,* 9 Cal. App. 83, [98 Pac. 71], and *Goff* v. *Ladd,* 161 Cal. 257, [118 Pac. 792], are among such cases.) The principle here involved is further illustrated in cases such as *Malone* v. *Crescent City M. & T. Co.,* 77 Cal. 38, [18 Pac. 858]. There defendant agreed to pay a certain amount to a creditor of one Murray who was engaged in running logs for defendant. It was held that an original indebtedness was thus created in favor of the creditor of Murray and that if a contract be for the benefit of a third person, even though he be not cognizant of it when made, the promise, if adopted by him, is deemed to have been made to him, and he may sue thereon, though the whole consideration moved to the promisor from the original promisee; and it is no objection to such action that the original promisee might also sue upon the promise. This principle was applied where the grantee of a mortgagor assumed the payment of the mortgage debt. (*Williams* v. *Naftzger,* 103 Cal. 438, [37 Pac. 411] ; *Alvord* v. *Spring Valley Gold Co.,* 106 Cal. 547, [40 Pac. 27]. See, also, *Meyer* v. *Parsons,* 129 Cal. 653, [62 Pac. 216] ; *Tevis* v. *Savage,* 130 Cal. 411, [62 Pac. 611].)

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.