[Civ. No. 2745. Third Appellate District.—November 20, 1924.]

## JOHN BERRINGER, Respondent, v. AUGUST KRUEGER, Appellant.

[1] PARTNERSHIP—LIABILITIES—COMMON-LAW RULE.—The common-law rule that the liabilities of a partnership are joint, or not joint and several, has been expressly adopted into our code.

[2] ID.—ACTION AGAINST INDIVIDUAL FOR SERVICES RENDERED—CLAIM OF PARTNERSHIP DEBT—EVIDENCE—PROVINCE OF TRIAL COURT.—In an action against a defendant individually to recover a balance due for work and labor performed by plaintiff, defendant's defense being that the obligation sued upon was that of a partnership of which he was a member and not his individual obligation, the trial court was the exclusive judge of the credibility of the witnesses and the weight to which their testimony was entitled, and it was entirely within its legal province, as the trier of the facts, to discredit and so reject the testimony of any of the witnesses.

[3] ID.—JUDGMENT—EVIDENCE—APPEAL.—In such action, the trial court having rendered judgment in favor of plaintiff, the result arrived at by the trial court upon the evidence must be interpreted on appeal to mean the rejection by it of the testimony of the defendant as to the claim that a partnership existed between him and another person as being without probative value, and the acceptance of the testimony of the plaintiff as representing the truth as to the issue whether the debt was a partnership or defendant's individual obligation.

[4] ID.—ABSENCE OF PARTNERSHIP RELATION—IMPLIED FINDING—EVIDENCE.—In such action, the implied finding that a partnership relation did not exist between the defendant and another person at the time of plaintiff's employment was supported by the evidence.

[5] ID. — AGENCY. — In such action, if the defendant, in employing plaintiff, was acting, not for himself alone, but for a partnership of which he was a member, then he was acting and did act as agent of the partnership or his copartner.

<hr/>

1.  See 20 R. C. L. 913; 20 Cal. Jur. 740.
5.  See 20 Cal. Jur. 742.

[6] ID.—AGENCY.—The law of partnership being a branch of the law of agency, the functions, rights, and duties of partners in a great measure comprehend those of agents, and the general rules of law applicable to agents likewise apply to partners.

[7] ID.—CONTRACT OF EMPLOYMENT—FAILURE TO DISCLOSE PARTNER-SHIP—EVIDENCE—LIABILITY OF DEFENDANT AS AN INDIVIDUAL.—In such action, granting that defendant employed plaintiff for and on behalf of a partnership of which he was a member, plaintiff had a right to hold the defendant personally and individually responsible for the fulfillment of the terms of the contract, or, in other words, he had the right to look solely to the defendant alone or as an individual, and not as a member of the claimed partnership, for payment for his services, where it may be assumed that the trial court did impliedly find that the plaintiff was not informed by the defendant of the fact that the employment was for the partnership, or was led by the circumstances under which or the manner in which defendant employed him to believe that the contract of employment was entirely between him and the defendant, personally, or as an individual, and not as a member of or for and on behalf of a partnership.

---

(1) 30 **Cyc.**, p. 565.    (2) 4 **C. J.**, p. 844, sec. 2830.    (3) 4 **C. J.**, p. 778, sec. 2728.    (4) 30 **Cyc.**, p. 415.    (5) 30 **Cyc.**, p. 477.    (6) 30 **Cyc.**, p. 477.    (7) 30 **Cyc.**, p. 534.

APPEAL from a judgment of the Superior Court of Humboldt County. George D. Murray, Judge. Affirmed.

The facts are stated in the opinion of the court.

Puter & Quinn for Appellant.

J. H. G. Weaver for Respondent.

HART, J.—The plaintiff brought this action to recover from the defendant the sum of $859.56, an alleged balance due the plaintiff for work and labor performed by him for the defendant.

The answer consisted merely of specific denials of the allegations of the complaint, which is in the usual or ordinary form for the recovery of wages or debt for wages.

Judgment was awarded plaintiff for the sum of $705.66. This appeal is by the defendant from said judgment.

---

6. See 20 R. C. L. 882.

There is no contention in the briefs that the plaintiff is not entitled to the compensation for which he sues. The defendant's contention is that the obligation sued on was that of a partnership of which he was a member and not his individual obligation, and that, although the answer does not plead a defect of parties defendant, the case was, nevertheless, tried upon the part of the defendant upon the theory that the debt constituted a partnership obligation; that upon that theory the evidence does not support the finding that the contract of employment was made with the plaintiff by the defendant as an individual.

Section 430 of the Code of Civil Procedure provides that when the complaint upon its face discloses that there is a nonjoinder or defect of parties defendant, the defendant may raise the question by demurrer, but if such defect does not appear from the complaint itself, then, by authority of section 433 of said code, the objection may be taken by answer. Section 434 provides: "If no objection be taken, either by demurrer or answer, the defendant must be deemed to have waived the same," etc. The complaint does not show upon its face that there was a defect or nonjoinder of parties defendant, and, as seen, the defendant failed or omitted to set up a plea in abatement on that ground.

[1] In this state the common-law rule that the liabilities of a partnership are joint, or not joint and several, has been expressly adopted into our code (Civ. Code, sec. 2442; see, also, *Iwanga* v. *Hagopian,* 39 Cal. App. 584 [179 Pac. 523]). The action here should have been against all the partners, if the obligation sued on was a partnership liability and the defendant was desirous of binding the partnership by this action. But the case was tried by the defendant upon the theory that the obligation sued on was that of a partnership, evidence having been received without objection tending to show that the obligation was that of a partnership of which the defendant was a member, and, therefore, not his individual obligation. And it has been held that, although a copartner sued separately upon a partnership obligation does not, by either of the two ways laid down by the above-named sections of the Code of Civil Procedure, object to the complaint or the action on the ground of nonjoinder of parties defendant, the question whether the obligation is

joint or several will be deemed to be an issue in the case, if, without objection, evidence is received tending to prove that the obligation sued on is that of a partnership and not that of the defendant, individually. (*Miner* v. *Rickey,* 5 Cal. App. 451, 453 [90 Pac. 718].) But with that issue thus brought into the case here, an examination of the evidence, as it appears before us, has not convinced us that we would be justified in holding that the findings fail of sufficient support.

The work, compensation for which the defendant seeks by this action, was performed at what are known as "The Wright Mineral Springs," a health resort. Where these springs are located the record fails to disclose. This, however, is a matter of no consequence.

There is no contradiction of the testimony of the plaintiff that the negotiations leading to his employment were, on the defendant's part, conducted by the defendant. The defendant, however, claims that the employment was for and on behalf of the "Wright Springs Company," a partnership of which he and one Miss Mamie Wright were the members. The plaintiff testified that he went to the springs in the spring of the year 1921 in the hope of being cured of a rheumatic affliction from which he was then suffering. While there the defendant employed him to make shakes to be used in the construction of a cabin or a house which the former was erecting. The matter of compensation was agreed upon between him and the defendant and he thereupon proceeded with the work. In the fall of the year 1921 the defendant personally employed plaintiff to remain at the spring as caretaker during the winter soon to follow. He was also to do certain work which was required to be done about the premises. Plaintiff testified that, while he saw Miss Wright at the springs, he had no acquaintance with her, never had any dealings with her in any manner or form, and, although he was aware of the fact that the springs bore the name of "Wright," he did not know, at the time of his employment or at any other time, until the claim was so made in this action, that Miss Wright was a partner of the defendant, if such was the fact. When he first went to the springs, he said, "Krueger had charge of the place. Miss Wright was there"; that a man named Graham was there part of the time and was in the employ of Krueger.

"I don't know Miss Wright," he proceeded. "I was hired by Krueger. . . . I never talked to Miss Wright or Graham about working there. . . . I didn't know that it (the springs) was in her name or that she had anything to do with it." He thought, so he testified, that Krueger was stopping at the springs for his health and that Miss Wright was his nurse. "All the conversation I had about work," he further testified, "was with Krueger. I never had any conversation with Miss Wright, not much. Whatever was done was because Krueger gave orders. . . . I had nothing to do with Miss Wright, so far as the work was concerned. I don't know of the arrangements between Krueger and Miss Wright. The party that was doing the paying and ordering was Krueger. I got directions from Krueger. Krueger left there (the springs) October 18, 1921. . . . Krueger told me he was going to pay me $75 a month and I board myself out of it. . . . I worked all the time. I had a lot of work to do. I received directions from Mr. Krueger —letters written by Mr. Krueger and purporting to have been written by him. If there was any arrangement between Krueger and Mamie Wright, I did not know about it." Plaintiff, on cross-examination, said that he saw Miss Wright at the springs, and knew that the springs were called "The Wright Springs Company," but, he added, "I was not working for the Wright Springs Company."

The witness A. R. Wilder, a carpenter, who was engaged in building a house for Krueger at the springs or, as he said, "for the Wright Springs Company," when plaintiff was employed by defendant, testified that he did not actually know but "supposed" that defendant and Miss Wright were partners in the springs, and that the firm name was "Wright Springs Company." He said that as a general rule directions as to his work were given by Krueger, but that Miss Wright occasionally took part in directing the affairs of the springs. He stated, though, that there were so many "conflicting orders" relative to the work he was doing and was engaged to do, that he finally asked defendant whose orders he was to obey, and that Krueger said he was himself the boss in the building of the cabin. This witness further testified that Miss Wright was opposed to hiring

plaintiff, but that defendant generally had his own way about such matters.

The witness Offield, for the plaintiff, testified that he saw plaintiff working (chopping wood) at the springs; that when Krueger left the springs in the fall he left plaintiff in charge of the place, having agreed to pay the latter $2.50 per day for his services. This information, Offield testified, he obtained in a conversation with the defendant. The witness further stated that defendant never in his presence said anything about a company; that defendant owed him (witness) for ''vegetable or truck'' delivered at the springs, and that defendant paid him with his personal check.

The defendant, testifying in his own behalf, stated that plaintiff was employed by and performed the services for which by this action he seeks to coerce payment for the Wright Springs Company, a copartnership, consisting of himself and Miss Mamie Wright. It is not necessary to state herein his testimony or even a synopsis thereof. It is sufficient to say that he declared that the obligation sued on was created by the partnership consisting of himself and Miss Wright and was, therefore, a partnership liability. He gave a somewhat detailed recital of the circumstances of plaintiff's employment by him; but his testimony appears to be characterized by some inconsistencies. In one breath he stated that the property (the springs) where plaintiff performed services were owned jointly by him and Miss Wright; then he declared that he was not a partner of Miss Wright and had no interest in the springs, but that he merely loaned her the money with which to buy the springs; then, again, he said he advanced the purchase price of the springs and that the property was taken in her name with the understanding that they were to own and manage it as partners.

It may well be conceded that the evidence, taken as a whole, is such that, if the findings had been in favor of the defendant, this court would not be at liberty, legally, to interpose interference therewith. [2] But the trial court, by which the case was tried without the aid of a jury, was, of course, the exclusive judge of the credibility of the witnesses and the weight to which their testimony was entitled. It was entirely within its legal province, as the trier of the facts, to discredit and so reject the testimony of any

of the witnesses. [3] The result arrived at by the trial court upon the evidence must be interpreted on appeal to mean the rejection by it of the testimony of the defendant as to the claim that a partnership existed between him and Miss Wright as being without probative value, and the acceptance of the testimony of the plaintiff as representing the truth as to that issue. [4] The implied finding that no partnership existed as is claimed is well supported by the plaintiff's testimony reciting the circumstances under which he was employed, the testimony of Offield and even certain statements of the defendant during the course of his testimony and to which reference has above been made. But, even if it were necessary to concede that there was hardly enough evidentiary support to the implied finding that a partnership relation did not exist between the defendant and Miss Wright at the time of plaintiff's employ-ment, still the fact stands undisputed that plaintiff was, not, at the time he was employed, informed or told by the defendant that the employment was for and on behalf of a partnership or for or on behalf of any other person but the defendant, individually, and further that plaintiff had no knowledge from any source of the existence of a partnership as claimed for the first time after the case was at issue and in the course of the trial. Nor does the evidence disclose any circumstances or conduct characterizing the business relations between the defendant and Miss Wright which would of themselves or of itself necessarily have led the plaintiff to suppose, at the time he was employed by the defendant, that they were partners, if such they were in fact, or that they sustained toward each other any other or further relation than that of employer and employee, except the bare fact that Miss Wright was at the springs and took more or less part in the running thereof—a circumstance equally applicable to Graham and other persons admittedly mere employees engaged in performing services in various capacities in and about the premises.

[5] It will not be doubted that, if the defendant, in employing plaintiff, was acting, not for himself alone, but for a partnership of which he was a member, then he was acting and did act as agent of the partnership or his copartner. [6] The law of partnership being a branch of the law of agency, ''the functions, rights and duties of partners in

a great measure comprehend those of agents, and the general rules of law applicable to agents likewise apply to partners." (20 R. C. L., sec. 94, p. 882.) **[7]** Granting, then, that defendant employed plaintiff for and on behalf of a partnership of which he was a member, if, as the court upon the evidence was at liberty to find and, we may assume, did impliedly find, the plaintiff was not informed by the defendant of the fact that the employment was for the partnership, or was led by the circumstances under which or the manner in which defendant employed him to believe that the contract of employment was entirely between him and the defendant, personally, or as an individual, and not as a member of or for and on behalf of a partnership, he would have the right to hold the defendant personally and individually responsible for the fulfillment of the terms of the contract, or, in other words, he would have the right to look solely to the defendant alone or as an individual, and not as a member of the claimed partnership, for payment for his services. "A man has the right to the character, credit and substance of the person with whom he contracts; if, therefore, he enters into a contract with an agent, who does not give his principal's name, the presumption is that he is invited to give credit to the agent, still more, if the agent does not disclose his principal's existence. If a person would excuse himself of responsibility (or sole responsibility in case of one partner making a contract for and on behalf of the partnership) on the ground of agency, he must show that he disclosed his principal at the time of making the contract, and that he acted on his behalf, so as to enable the party with whom he deals to have recourse to the principal in case the agent had the authority to bind him." (1 Cal. Jur., p. 860.)

We are unable to see our way clear to disturb the judgment, and it is accordingly affirmed.

Plummer, J., and Finch, P. J., concurred.