[Civ. No. 2770.  Third Appellate District.—December 15, 1924.]

## MRS. A. McDEVITT, Respondent, v. CHAS. CORRIEA & BROS., Appellant.

[1] PRINCIPAL AND AGENT — JOINT LIABILITY. — A principal and his agent are not jointly' liable upon any contract made by the agent for the principal.

[2] ID. — SALE OF TURKEYS — JOINT AND SEVERAL JUDGMENT — FINDINGS—JUDGMENT—EVIDENCE.—In this action on a complaint in the form of a common count to recover a balance due for turkeys, in which action plaintiff sued not only the persons who had acted as the local buyers but also the concern to which the turkeys were shipped, and in which the trial court made findings substantially in the language of the complaint and rendered a joint and several judgment against all the defendants, there was no evidence to support the theory upon which the decision and judgment appeared to proceed, namely, that the relation between the local buyers and the concern to which the turkeys were shipped was either that of a partnership or a joint adventure; and as the findings and judgment had nothing to support them, they could not be upheld on appeal by the defendant concern to which the turkeys were shipped.

[3] ID.—ACTION AGAINST PRINCIPAL AND AGENT—DUTY TO MAKE ELECTION.—In an action on a contract against a principal and against his agent, through whom the contract was made on behalf of the former, the plaintiff is not entitled to judgment against both, but must, before the close of the trial and after the relation of principal and agent between the defendants in the making of the contract has been ascertained or discovered, elect as to which of the two defendants, the principal or the agent, she desires or intends to hold liable by the judgment; and the obligation on her part to make such election before the close of the case is the same whether she assumed from the beginning

that the relation between the defendants was that of principal and agent or whether the evidence at the trial disclosed such relationship for the first time.

[4] ID.—JUDGMENT AGAINST AGENT—ELECTION.—When a plaintiff prosecutes his action to judgment as against a party after he learns that such party was acting as an agent only of another in the transaction upon which the action is based, the course thus pursued by him constitutes an election as a matter of law, and he must stand upon such election regardless of whether the judgment is or may be satisfied by the judgment debtor.

[5] ID. — DEFAULT JUDGMENT AGAINST AGENT — ABSENCE OF KNOWLEDGE OF RELATIONSHIP.—Where a plaintiff sues both the principal and the agent, and judgment is taken against the latter by default before plaintiff knows that the relation between the defendants was that of principal and agent, the rule that the prosecution of the action to judgment as against the agent constitutes an election, may not apply, as in such case the default judgment might be set aside upon motion and a showing that the relation of principal and agent was not known to plaintiff until after the default was taken.

[6] ID.—FINDINGS—EVIDENCE—APPEAL—REVERSAL.—While a case will be reversed where it appears that findings vital to the judgment are devoid of sufficient support from the evidence, or an appellate court may, where justified or required from the very character of the findings, order the trial court to enter judgment upon the findings different from the one entered, a reviewing court is wholly without legal authority to make a finding, even where it is clear that the evidence would support such findings as would in legal effect be diametrically opposed to those made. (Opinion on denial of rehearing.)

---

(1) 2 C. J., p. 844, n. 91; 4 C. J., p. 787, n. 47. (2) 4 C. J., p. 1166, n. 82. (3) 2 C. J., p. 844, n. 92; 4 C. J., p. 788, n. 55. (4) 2 C. J., p. 846, n. 6. (5) 2 C. J., p. 845, n. 98; 4 C. J., p. 787, n. 47. (6) 4 C. J., p. 882, n. 22, p. 1123, n. 46, p. 1151, n. 27, p. 1186, n. 61, p. 1188, n. 92, p. 1189, n. 6.

APPEAL from a judgment of the Superior Court of Yuba County. Eugene P. McDaniel, Judge. Reversed.

The facts are stated in the opinion of the court.

Devoto, Richardson & Devoto and Anthony S. Devoto for Appellant.

Ray Manwell for Respondent.

HART, J.—Plaintiff brought this action to recover from the defendants the aggregate sum of $1,101.33, alleged to be balances due her and four other parties who assigned their claims to her prior to the commencement of this action, from the sale of turkeys to the defendants. The complaint, which was filed on the thirteenth day of January, 1923, is unverified, and, in five different causes of action, each in the form of a common count, sets up plaintiff's own and the claims of her several assignors for goods, wares, and merchandise sold to the defendants.

The answers of defendants Chas. Corriea & Bros. and Charles Corey (erroneously sued as Charles Correy), each denied the allegations of each of the causes of action set up in the complaint. The defendants A. C. and Rose Biggerstaff failed to answer the complaint and judgment against them was taken by default.

The case as to the answering defendants was tried by the court, sitting without a jury, and the findings and the judgment were against them and the Biggerstaffs in favor of the plaintiff in the total sum of $1,068.71. The defendant, Chas. Corriea & Bros., made a motion for a new trial, which was denied, and the appeal is by said defendant from the judgment.

According to his answer and testimony, the defendant Chas. Corriea, at the time that the transactions herein involved took place, was a commission merchant, buying and selling farm produce in the city of San Francisco under the firm name of "Chas. Corriea & Bros.," said Chas. Corriea being the sole owner of said business and hence the sole member of said firm. (We shall hereinafter refer to said defendant as Corriea.)

It appears that, either in the month of July or August, 1922, the defendant A. C. Biggerstaff, a resident and farmer and turkey-raiser in Yuba County, entered into some sort of understanding or arrangement with Corriea, whereby the former was to purchase and ship turkeys to the latter at San Francisco for the Thanksgiving and succeeding holiday trade in said city. Said Biggerstaff subsequently employed the defendant Charles Corey to assist him in the purchase of turkeys for the purpose stated. Corey was also a resident of and a farmer in Yuba County. A few weeks prior to Thanksgiving Day in 1922 said Biggerstaff and Corey purchased the turkeys of a number of the turkey-raisers in Yuba County and shipped them to Corriea in San Francisco.

Among those from whom turkeys were thus purchased were the plaintiff and her assignors. Corey, in a majority of the instances of the purchases so made, personally conducted the negotiations and completed the bargains leading to such purchases. The Biggerstaffs turned over their check-book to Corey, the understanding being that Corey, on purchasing turkeys, should give the vendor a check signed by the Biggerstaffs on the First National Bank of Marysville, at Marysville, an arrangement having been made with the cashier of said bank by said A. C. Biggerstaff that said checks were to be held by the bank until the money called for thereby was deposited in the bank by Corriea upon drafts drawn upon him by said Biggerstaff. The plaintiff and her assignors were each given such a check for the amount for which the turkeys bought from them totaled. We do not understand from the record that the plaintiff or her assignors, at the time of the sale of their turkeys, knew of the arrangement spoken of between A. C. Biggerstaff and the bank with regard to the payment of the checks. But, at all events, the plaintiff and her assignors presented their checks to the bank for payment, but they were dishonored because of there being no funds in the bank from which they could be paid. Some time thereafter—a week or ten days or perhaps a longer period—the plaintiff and her assignors received or were paid one-half of the amount for which the checks so issued to them respectively called.

It appears that the day immediately preceding Thanksgiving Day of 1922 there was a "slump" in the turkey market in San Francisco, with the result that the prices at which turkeys could be sold in said market were below those which Biggerstaff and Corey agreed to pay the plaintiff and her assignors for their turkeys. This situation provoked a controversy between A. C. Biggerstaff and Corriea, which culminated in the commencement of the present action.

The defendants A. C. Biggerstaff and Corey claimed at the trial that in purchasing the turkeys they acted under authority conferred upon them by Corriea as the agents of the latter. Corriea likewise claimed that said Biggerstaff acted independently of him and bought the turkeys upon his own responsibility, with an understanding between him and said Biggerstaff that the latter would ship such turkeys as he might purchase to him at San Francisco on consignment, and there to be by Corriea sold for said Biggerstaff.

The foregoing embraces a general statement of the facts and the issue upon which the case was tried below.

The defendant and appellant makes these points: 1. That the findings do not derive support from the evidence; 2. That, assuming that the theory of the decision is that A. C. Biggerstaff, as the agent of Corriea, purchased the turkeys and that upon that theory the findings derive sufficient support from the evidence, the judgment, nevertheless, cannot stand, for the reason that it fixed a joint and several liability against all the defendants, whereas, in such case, or where an action is based upon a transaction initiated and consummated for a party through an agent, and both the principal and agent are made parties defendant thereto, the plaintiff, while having the right to make both parties defendants to the action, must, either during the progress of the trial or before the close thereof, in case the relation of principal and agent between the defendants as to such transaction is disclosed, make an election as to which of the two, the principal or the agent, he desires and intends to fix liability upon for the claim sued on.

The findings are substantially in the language of the allegations of the several counts of the complaint. The conclusion of law from the findings is as follows: "As a conclusion of law from the foregoing facts the court finds that the plaintiff is entitled to joint and several judgment against defendants A. C. Biggerstaff, Chas. Correy and Chas. Corriea & Bros., in the sum of $1,068.71 and said plaintiff is also entitled to judgment joint and severally against defendants A. C. Biggerstaff and Chas. Corriea & Bros. in the further sum of Thirty Two Dollars and Sixty Two cents ($32.62), and for the costs of suit."

The judgment follows the conclusions of law.

The evidence justified a decision only upon either one or the other of two opposing theories, to wit: 1. That the relation between Corriea and Biggerstaff and Corey was that of principal on the part of Corriea and agents on the part of the other two; or, 2. That the agreement between Corriea and A. C. Biggerstaff was that the latter was to purchase the turkeys on his own account and ship the same to Corriea on consignment, or, in other words, were to be shipped by A. C. Biggerstaff to Corriea and by the latter marketed or sold for the former. These were the positions taken at the trial by said Biggerstaff and Corey, on the one hand, and

by Corriea on the other, and they constituted the single issue submitted for decision. Under the allegations of the complaint, it was competent to prove whatever might have been the contractual relation existing between the defendants as to the transactions involved herein. The findings, following as they do the language of the complaint, are not specific, and, taken alone or without reference to the judgment, it would be impossible to determine from them what the decision of the court is as to the legal relation existing between the defendants in the business of purchasing the turkeys. In that condition of the findings, however, the presumption must be indulged that they support the judgment and the theory upon which it proceeds. The theory of the judgment upon its face is that the defendants, in the carrying out of the transactions upon which the action is founded, were both jointly and severally liable. Whether that theory was founded in the belief that a principal and his agent, as to any contract the latter has made within the scope of his authority as such for the former, are jointly or both jointly and severally liable thereon, cannot be ascertained from the findings. [1] As will later be pointed out, a principal and his agent are not jointly liable upon any contract made by the agent for the principal. Therefore, to support the theory that the liability of the defendants here was joint or joint and several, there must have been substantial evidence introduced showing that the defendants were either joint adventurers or copartners for a limited or a special purpose. But, save and except a detached statement here and there of A. C. Biggerstaff and Corriea in giving their testimony—a statement which might be interpreted to bear different meanings but from which a supposition might be strained that the agreement between A. C. Biggerstaff and Corriea was that they were jointly to buy the turkeys and share in the profits of the enterprise—there is absolutely no evidence to support the findings, interpreted here as they must be. In other words, there is no substantial, if any, evidence affording support to the theory upon which the findings and the judgment seem to proceed, to wit: That the defendants were or are jointly liable to the plaintiff and her assignors for the turkeys purchased by Biggerstaff and Corey from them and shipped to Corriea.

The sole theory upon which the plaintiff's case was tried below was that, in purchasing the turkeys, A. C. Biggerstaff

and Corey acted for and represented Corriea as his agents.
There was not at the trial, nor is there here, any pretense by
the plaintiff that Biggerstaff and Corey purchased the tur-
keys in any other capacity than as agents of and for Corriea.
The evidence presented by the plaintiff was addressed solely
to the proof of the proposition, contended for by her attor-
ney at the trial and here, that Corriea had employed A. C.
Biggerstaff as his agent to buy turkeys for him and that
Biggerstaff employed Corey as a subagent to assist him in
the business and that Corriea ratified said Biggerstaff's act
in so employing Corey for that purpose. The testimony
relied upon by the plaintiff to establish as between Corriea
on the one side and said Biggerstaff and Corey on the other
the relation of principal and agent in conducting the trans-
actions involved herein is that of said Biggerstaff. As briefly
as it may be stated, that portion of his testimony directly
bearing upon the question of his relationship, contractually,
with Corriea in the purchase of the turkeys, is, in substance,
as follows: That during either the month of July or the
month of August, 1922, A. C. Biggerstaff received from
Corriea several letters in which the latter stated that he in-
tended going to Yuba County and "fix me [the witness] up
for *buying turkeys for him* for these holidays. Later on,"
proceeded Biggerstaff, "he came up and out to my ranch. I
met him in town and he went out to my ranch with me and
looked over the turkeys. . . . We talked the matter over.
He told me he would give me an opportunity to buy tur-
keys—a chance to make four or five or six hundred dollars,
and he says, 'You are not limited if it is $10,000.' . . . We
then came back to town [meaning the city of Marysville] to
see Mr. Smith [cashier of the First National Bank of Marys-
ville]. We went down to his [Smith's] house Saturday
afternoon, parked the car in front of his house, but he was
out. . . . He told me he would give me a percentage *for
doing his buying that way*. . . . There was nothing said
about profits at that time. He says, 'I will treat you right
in all deals.' . . . Afterward I called him up on the phone
and asked him about buying turkeys, what I could pay for
them, a number of times. Chas. Corriea [appellant] fixed
the price which I should pay for turkeys." The witness
proceeded to explain that the arrangement was that, upon
the purchase of turkeys, the check of his wife on the First
National Bank of Marysville would be given the vendors for

the amount when the turkeys were received by Corriea in San Francisco, he (said Biggerstaff) to draw on Corriea through said bank for the amount of the check issued by him or his wife or Corey, and that the money received on the draft was to be deposited in the bank, to be used in honoring such checks as he or Corey had given to the vendors. Said Biggerstaff further testified that he employed the defendant Corey as a "subagent" to assist him in buying turkeys for Corriea, agreeing to divide with Corey any money he (witness) received as compensation for his services as agent. "A day or two before Thanksgiving," continued Biggerstaff, "I told Corriea over the telephone that we [witness and Corey] were buying turkeys." Corriea inquired, "Who is Corey buying for?" Witness answered, "Helping me buy for Chas. Corriea." Corriea replied, "That is all right, fine and dandy." The witness then asked Corriea, "What is the price?" to which Corriea replied, "Forty-eight cents looking toward fifty-three and fifty-five cents but don't pay over forty-five cents."

On cross-examination, said Biggerstaff was asked if he had "rendered a bill" to Corriea for his services in buying the turkeys and he responded that, on account of the slump in the turkey market, he sent no bill to Corriea for his services in buying the turkeys; that, after the "slump," he said to Corriea that "We will waive all rights to what we have got coming if you will settle up everything on account," but that Corriea made no reply to that proposition. Further referring to the fact that Corriea had paid him nothing for his services, Biggerstaff said: "I was waiting for the court to settle it. . The court would undoubtedly give me what was coming to me for my labor." The witness further stated, on cross-examination, that Corriea *authorized him* in the summer of 1922—either in July or August—to buy turkeys for him (Corriea.) The witness produced a letter from Corriea to him, dated August 16, 1922, in reply to a letter previously addressed to Corriea by witness. The letter from Corriea to witness stated, among other things, that he (Corriea) had been too busy "to get away," but that he would endeavor "to get in your territory some time next week and we will make arrangements to buy the other turkeys you have in view and we will talk the whole proposition at that time." There was some other testimony tending to show that A. C. Biggerstaff was employed by Corriea to act as the

latter's agent in the transactions. It is not necessary to give a statement of the testimony referred to herein.

The plaintiff and her assignors testified that they did not know for whom Biggerstaff and Corey were buying turkeys at the time that they sold their turkeys to them. The plaintiff, though, it should be stated, did say that she "understood" that A. C. Biggerstaff and Corey were buying turkeys for Corriea, but that part of her testimony was stricken out.

It is not necessary to refer herein to the testimony presented by the appellant. It will suffice to say that the testimony so presented tended to show that the agreement between A. C. Biggerstaff and Corriea was that the former was to ship turkeys to the latter on consignment, and that Corriea was to sell the same for Biggerstaff for the usual commission for such services.

It will be noted, from the testimony of A. C. Biggerstaff, as hereinabove given, that the sole claim of the plaintiff at the trial, as it is her sole contention on this appeal, was that in purchasing and shipping the turkeys to Corriea said Biggerstaff acted as the agent of the latter. [2] This being so, and there being no evidence which supports the theory upon which the decision and the judgment appear to proceed, to wit: That the relation between the defendants in the transactions involved herein was either that of a partnership or a joint adventure, the findings and the judgment have nothing to support them and cannot, consequently, be upheld.

There are, however, certain considerations which, in view of a retrial of the issue as to the character of the relation between defendants, pertinently call for notice herein. If a retrial develops the same situation, evidentially, as is presented by this record, then the findings and judgment must be in accord with the one or the other of two different and antagonistic theories, to wit: 1. That A. C. Biggerstaff and Corey represented Corriea as agents in the buying of the turkeys; or 2. That the agreement was that Biggerstaff and Corey, having purchased the turkeys for themselves or on their own account, delivered them to Corriea on consignment, to be by him sold for the former. If the evidence, in the opinion of the trial court, sufficiently shows, to justify a finding to that effect, that in the carrying on of the transactions concerned here, the relation of principal, on the part of Corriea, and agents, on the part of A. C. Biggerstaff and

Corey, existed, then the appellant is entitled to have judgment entered in his favor, since the plaintiff now has an unimpeached, and, indeed, an unimpeachable judgment against the agents. [3] This proposition follows from the well-settled rule that in an action on a contract against a principal and his agent, through whom the contract was made on behalf of the former, the plaintiff is not entitled to judgment against both, but must, before the close of the trial, and after the relation of principal and agent between the defendants in the making of the contract has been ascertained or discovered, elect as to which of the two defendants, the principal or the agent, he desires and intends to hold liable by a judgment. The rule and the reasons supporting it are exhaustively considered in 2 Mechem on Agency, section 1750 et seq., but no more clearly than by Mr. Presiding Justice Finlayson in *Ewing* v. *Hayward*, 50 Cal. App. 708, 717. [195 Pac. 970], in a concurring opinion in which Mr. Justice Weller concurred, thus making it the decision of the court. We here quote from said opinion *in extenso* because it contains a singularly lucid exposition of the rule and the reasons upon which it is grounded: ''The agent is liable because credit was originally extended to him in the belief that he was acting for himself. The undisclosed principal is liable on the theory that, having received the benefit of the contract made by his agent, he should assume its burdens. There is but one contract upon which the plaintiff in such an action can bring suit. The person with whom such plaintiff has directly contracted, the agent of the undisclosed principal, may be held liable on the contract as the real obligor, for he contracted in that capacity. Or, if the plaintiff in such an action so choose, he may treat the contract as the obligation of the undisclosed principal for whose benefit it was made, notwithstanding that, on the face of the contract, his agent appears to be the true obligor. There is, as we have said, but one contract in such cases. And though the plaintiff may elect to hold either one of two persons liable on that contract, either the agent or his undisclosed principal, he cannot make two contracts out of the one contract by seeking to hold each of those two persons liable severally as an independent obligor. Nor can he hold them both liable as joint obligors on one contract. He contracted with but one obligor, not two; and though he may elect to hold either one of the two liable as the obligor under

the contract, he may not hold them both jointly liable, for to do so would be to give him two obligors where he contracted with, and for the liability of, but one. The result is that the liability of the agent and his undisclosed principal is an alternative rather than a joint or joint and several liability, and either may be so held, but not both. So we find that, according to the weight of authority, it becomes the duty of the creditor, after disclosure of the agency and the identity of the principal, to elect which of the two he will look to to carry out the agreement of the agent. (Note to *Murphy* v. *Hutchinson*, 21 L. R. A. (N. S.) 786.) It seems that if, as in the instant case, the alleged undisclosed principal denied the existence of the relation of principal and agent, the party seeking to recover on the contract may commence the action against both the alleged undisclosed principal and his agent, in order to ascertain the facts. But though the plaintiff may bring the action against both, the rule, as I understand it, is that the plaintiff in such an action cannot have judgment against both the undisclosed principal and his agent, but, before the close of the case, must elect whether he will take a judgment against one or the other. (See *Sessions* v. *Block*, 40 Mo. App. 569; *Pittsburg Plate Glass Co.* v. *Roquemore* (Tex. Civ. App.), 88 S. W. 449; *Weil* v. *Raymond*, 142 Mass. 206 [7 N. E. 860]; *Tuthill* v. *Wilson*, 90 N. Y. 423; *Mattlage* v. *Poole*, 15 Hun (N. Y.), 556.)''

Counsel for the plaintiff cites certain California cases which he claims hold that both principal and agent are liable to third parties dealing with the agent within the scope of his authority as such, and that an action may be maintained and prosecuted to judgment against both. In one of the cases cited by counsel certain language, taken by itself, might be construed as supporting that view. (See *Montgomery* v. *Dorn*, 25 Cal. App. 666, 670 [145 Pac. 148].) There is no dispute as to the proposition that, as the case just named states, both the principal and agent are liable under a contract executed by the agent for the former when acting within the scope of his authority as such agent; nor can it be disputed that a party may proceed against the principal and agent upon any contract so made. These propositions are clearly stated in *Ewing* v. *Hayward, supra*. But, as pointed out in that case, when, in the course of the trial, it appears that one of the defendants was the agent of the other in the

making of the contract sued on the plaintiff must, before the close of the case, elect whether he will take judgment against the principal or against the agent. But as to the case of *Montgomery* v. *Dorn, supra,* it will be noted that, although the plaintiff did not exercise such election as between the principal and his agent, the defendants therein, the findings and the judgment acquitted the agent of liability on the contract sued on, but held the principal solely liable. The agent, having been exonerated, suffered no prejudice and, therefore, had no occasion to appeal and did not appeal. The principal was by the judgment merely required to perform the terms of his own contract. It was not, under the circumstances, for him to complain that an election had not been made as between him and his agent. The discussion of the question in that case was, therefore, academic.

In the present case, while it is true, as we have said, that the contractual relation between the defendants, whatever may have been the nature thereof, may be shown under the complaint, still, as stated, that pleading appears to proceed upon the theory of the joint or joint and several liability of the defendants, and it may be assumed therefrom and also from the testimony of A. C. Biggerstaff, that the plaintiff did not definitely know the true relation between the defendants in the buying of the turkeys until said Biggerstaff gave his testimony at the trial—at any rate, not until after the complaint had been filed. But whether this was true or not true, or, even if the plaintiff assumed from the beginning that the relation between defendants was that of principal and agents, and proceeded in the presentation of her case according to that theory, it was still her duty, before the close of the case, to have made an election as to which of the defendants, Corriea, as principal, or A. C. Biggerstaff and Corey, as agents, she intended to fix liability upon.

But, assuming that, on another trial, the evidence is as it appears in this record, and that the court should find that A. C. Biggerstaff and Corey bought the turkeys for Corriea as the latter's agent, the situation is that there is in existence now an unimpeachable judgment against the agents. The action being on contract, and the judgment reciting that the Biggerstaffs defaulted, and that their default was duly and regularly entered, the presumption is that said default, with its essential consequences, was entered upon the application of the plaintiff (Code Civ. Proc., sec. 585, subd. 1). The

action, as we have seen, was prosecuted to judgment against Corey. Thus the question arises: Were the act of applying for and securing a default judgment against Biggerstaff and the fact of prosecuting the action to judgment against Corey the equivalent of an election as a matter of law? Mr. Mechem, in his work on Agency, volume 2, second edition, section 1759, says: ''Prosecuting the action to judgment against the agent, after discovery of the principal, has been held in several cases to constitute an election as a matter of law. As a mere matter of ordinary election, this is undoubtedly sound; as a matter of a possible merger it may also be sound; but if election be treated in the manner which has been suggested it cannot well be said that changing the form of the agent's obligation, or putting it into a condition in which it can be more readily enforced, is inconsistent with an intention to proceed against the principal also. Nothing short of satisfaction of the judgment against the agent would then release the principal as a matter of law, and some cases have so held.''

Authorities supporting both views of the proposition as indicated in the text are cited in the footnotes. [4] It seems to our minds, however, that the stronger position is that taken by the cases holding that when a plaintiff prosecutes his action to judgment as against a party after he learns that such party was acting as an agent only of another in the transaction upon which the action is based, the course thus pursued by him constitutes an election as a matter of law, and that he must stand upon such election regardless of whether the judgment is or may be satisfied by the judgment debtor.

[5] It may incidentally be suggested that perhaps the above rule would not apply where a judgment had been taken by default before the plaintiff knew that the relation between the defendants was that of principal and agent. In such case, the default judgment might be set aside upon motion and a showing that the relation of principal and agent was not known to the plaintiff until after the default was taken.

In returning the case to the court below, however, it is well to suggest that if the question referred to be retried a specific finding should be made as to the relationship of the defendants in the transactions. Obviously, if it be found

that A. C. Biggerstaff and Corey were the agents of Corriea in the purchase of the turkeys, then the latter, as we have stated, is entitled to a judgment, since plaintiff already has a judgment against the former. If the finding is that of a joint adventure or copartnership between the defendants in such purchase, then, of course, Corriea would be jointly liable and may be so adjudged.

It may with no impropriety be suggested that if it be found that the relation between the defendants was that of principal and agent, then, upon the satisfaction of the judgment by the agents, there would thereupon accrue to the latter a right of action for indemnity or recoupment against Corriea. But be that as it may, for the reasons hereinabove given, the judgment must be reversed, in so far as the appellant is concerned, and, accordingly, it is so ordered, with directions to the trial court to be governed in another trial of the case by the views herein expressed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 14, 1925, and the following opinion then rendered thereon:

HART, J.—The appellant petitions for a rehearing, claiming, as he claimed in his briefs, that the record supports no other course by this court than that of ordering the court below to enter judgment in his favor. We thought our position on the proposition was made sufficiently clear in the former opinion. However, the case presents rather an unique situation and that there may be no misapprehension as to our views regarding the points discussed in the original opinion and renewed by the appellant in his petition, we will take the pains to restate them here.

As pointed out in the opinion originally filed herein, the complaint is in the form of a common count as to all the several causes of action therein set forth as for "goods, wares and merchandise" sold and delivered to defendants. The averments of the complaint are, therefore, general in their nature, or not specific as to the contractual relation existing between the defendants in the transactions involving the purchase and sale of "goods," etc. As also likewise shown, the findings are, substantially, in the language of the

complaint, and are not, therefore, specific as to the nature of the business relation between the defendants in the business of purchasing the turkeys. It is hence impossible to determine from the findings themselves the theory upon which the case was decided as to such relation. The conclusions of law and the judgment, however, fix the liability of the defendants as joint and several, from which the conclusion would seem fully justified that it was not the theory of the trial court that the contractual relation between the defendants in the transactions involved in the controversy was that of principal and agent. The theory of the decision, as indicated by the conclusions of law and the judgment, is that the relation was of that nature which made the defendants jointly and severally liable, and the only legal relation between two or more persons combined together to carry on a business or some particular transaction is either that of a partnership or a joint adventure. Hence, the only permissible conclusion from the conclusions of law and the judgment is that the court proceeded upon the hypothesis that the business of buying the turkeys was conducted by the defendants either as partners or joint adventurers, albeit the law in this state is that the liability of partners is joint and not joint and several (Civ. Code, sec. 2442; *Iwanga* v. *Hagopian,* 39 Cal. App. 584 [179 Pac. 523] ; *Berringer* v. *Krueger,* 69 Cal. App. 711 [232 Pac. 467]), which, however, is a matter of no consequence to this discussion, since the judgment does not hold the defendants to the liability arising from the relation of principal and agent. The findings not being specific as to the nature of the relation between the defendants, or, in other words, being entirely silent on that subject, the presumption must be indulged that they support the judgment, even though it is true, as stated in the former opinion, that there is no evidence in the record which would support a specific finding that the contractual relation between the defendants was such as to make their liability either joint or joint and several. This being the situation, it is beyond the province of this court to order the court below to enter or cause to be entered judgment for and in favor of appellant. [6] While it is true that a case will be reversed where it appears that findings vital to the judgment are devoid of sufficient support from the evidence, or that an appeal court may, where justified or required from the very

character of the findings, order the trial court to enter judgment upon the findings different from the one entered, it is equally true that a reviewing court is wholly without legal authority to make a finding, even where it is clear that the evidence would support such findings only as would in legal effect be diametrically opposed to those made. (*Sprague* v. *Walton,* 145 Cal. 228, 234 [78 Pac. 645].)

The case of *Ewing* v. *Hayward,* 50 Cal. App. 708 [195 Pac. 970] (referred to in our original opinion), is no authority, as counsel seem to intimate in their petition, for the course which it is insisted should be pursued in the present case, to wit: Reversing the judgment as to appellant and directing the court below to enter judgment for and in his favor. In that case the finding was that the defendants were jointly liable. The evidence clearly showed, according to the opinion therein, that the defendants, in the transaction which was the subject of the action, sustained the relation of principal and agent. The opinion of Mr. Justice Thomas reversed the judgment as to one of the defendants, while the opinion of Mr. Presiding Justice Finlayson, concurred in by Mr. Justice Weller, merely stated: "The lower court, instead of requiring plaintiff to make an election at the close of the case to take judgment against the agent or the undisclosed principal, . . . entered judgment against both. This, I think, is ground for a reversal." Thus it will be seen that the order of Mr. Justice Thomas reversing the judgment was concurred in by his associates but for reasons different from those for which the former conceived that the judgment should thus be nullified. The judgment of reversal contained no specific directions to the trial court as to the course it should follow. In other words, the trial court was not ordered to enter judgment for the defendant victorious on the appeal upon the findings as made. Indeed, the effect of the judgment in that case was merely to reverse the judgment below on the ground that there was no evidence which supported the finding that the defendants were jointly liable. The judgment of this court in this case amounts to the same thing, no more and no less, adding the suggestion, however, that on a retrial, if there be one, a specific finding as to the nature of the contractual relation between the defendants in the transactions concerned here be made.

Counsel in their petition also complain that, in considering and disposing of the case originally, we overlooked certain evidence which they claim unquestionably sustained the position of their client at the trial and here that the understanding was that A. C. Biggerstaff was to purchase the turkeys on his own account and thereupon ship them to Corriea to be by him sold for the former in consideration of the commissions usual in such transactions. We did not, in the original examination of the case, overlook the evidence referred to or any other evidence disclosed by the record. There were, however, unimpeachable reasons for not making specific reference to said evidence in the original opinion. Although a matter of no legal significance here under the peculiar circumstances of this case, it is to be observed that the effect of the evidence referred to by counsel was merely to create a substantial conflict in the evidence as to the nature of the contractual relation existing between appellant and his codefendants in the prosecution of the transactions involved herein. But the omission to consider specifically said evidence in the former opinion was clearly justified upon the reason first hereinabove explained, to wit: That even if the evidence had shown without conflict that the understanding between A. C. Biggerstaff and Corriea was that the former should purchase the turkeys on his own responsibility and ship them to the latter on consignment, it would still be in excess of the power or province, legally, of this court to order judgment for the appellant on the finding, as presumptively made, that he was jointly and severally liable with his codefendants.

Counsel further state that the expense of a retrial should not be had, since it is manifest that the evidence introduced at another trial of the case must necessarily be precisely the same evidence introduced at the trial with which we are here concerned. We cannot assume that such will be the case. Conceding, though, that the evidence received on a retrial of the action will be precisely the same as that received at the first trial, yet that consideration does not and cannot alter the situation. If the theory of principal and agents in the carrying out of the transactions is still maintained by plaintiff on a retrial, and the evidence is the same and the trial court so accepts it, then there would be left open to the court below no other course than to enter judgment for the appellant exonerating him from liability to the

plaintiff, upon the proposition, as fully gone into in the former opinion, that the plaintiff, having already a judgment against the agents, cannot also have one against the principal. But whatever may be the decision of the court below upon the question of the contractual relationship between the parties in the transactions here concerned, the findings should clearly and specifically set forth such relationship so that there can be no question from the decision as to the legal nature thereof. Of course, the parties to the action could enter into a stipulation to the effect that such findings may be founded upon the evidence as already received. This manifestly would save the expense of a retrial. This, however, is obviously a mere suggestion which the parties themselves may or may not adopt.

The petition for a rehearing is denied.

Plummer, J., and Finch, P. J., concurred.