[Civ. No. 9539.   Second Appellate District, Division One.—January 29, 1936.]

SOUTHERN GLASS COMPANY (a Corporation), Appellant, v. DAIRY SERVICE CO., LTD. (a Corporation), et al., Respondents.

John O. Bender for Appellant.

A. D. Orme and Benj. S. Parks for Respondents.

HOUSER, P. J.—As far as are necessary to a consideration of the decisive questions presented on this appeal, in substance it appears that one Dave Marx, who was operating a business under the fictitious name of Dairy Service Co., had been engaged in the business of supplying trade-marked milk bottles to several different dairies; that with some variations in the price, dependent upon size of container and fluctuating market conditions, as a general proposition, at the outset Marx bought such bottles from the plaintiff at a price of about $5\frac{1}{2}$ cents per bottle, and distributed them to dairies at a price (or rental) of $4\frac{1}{2}$ cents per bottle. As bottles became lost and were collected by other dairies, eventually they were sent to, or received by, a bottle exchange, from which establishment they were recovered by Marx, who paid to such bottle exchange 3 cents per bottle. Thereupon, at the original price or rental of $4\frac{1}{2}$ cents per bottle, he again delivered the bottles to his respective customers,—from which course of transactions he expected to realize a profit. His business having increased to considerable proportions, Marx together with some, but not all, of his customers, formed a corporation that was known and desig-

nated by a name identical with that theretofore used by Marx as a fictitious business name, excepting that the abbreviation "Ltd." was added thereto, and the corporate name thus became "Dairy Service Co. Ltd." From approximately the commencement of the transaction of business under the fictitious name of Dairy Service Co., Marx became indebted to the plaintiff; and after the organization of the corporation, the indebtedness which theretofore had been incurred by Marx was so largely increased as against the corporation, or possibly against "Dairy Service Co.", that in order to insure its payment a promissory note secured by a chattel mortgage on the business and equipment of the corporation was executed and delivered by it to the plaintiff. Thereafter, on the failure by the corporation to pay the note when it became due, the plaintiff instituted a suit against the corporation on said note, in which suit a prayer was included for the foreclosure of the chattel mortgage, and which suit resulted in a recovery by the plaintiff of a judgment against said corporation. In execution of the judgment, on foreclosure sale, the plaintiff bought the business and equipment of the corporation for less than the amount of the judgment and thereupon became entitled to a deficiency judgment for the difference between the amount of the original judgment and the amount for which the property of the corporation was sold on foreclosure sale thereof. Thereupon, on the theory that the stockholders of the corporation and all its customers constituted but an association of persons both before and after the incorporation of Dairy Service Co. Ltd., of which at all times in question Dave Marx was the managing agent, the plaintiff instituted the instant action to recover against all such persons a judgment for the unpaid balance on the account which theretofore had existed between the plaintiff and Dairy Service Co. and Dairy Service Co. Ltd. Based on substantial evidence, the trial court found as facts that no association, as such, had ever existed; that at all times in question, the plaintiff had had full knowledge of the facts regarding the relationship that existed among the several parties, including the plan and mode of operation of the business originally conducted by Marx under the fictitious name of Dairy Service Co., and later by the corporation known as Dairy Service Co. Ltd.; and that after a full investigation by the plaintiff of the credit-standing both of Marx and Dairy Ser-

vice Co. Ltd., had extended credit in its several transactions with the interested parties solely and exclusively first to Marx and later to the corporation, Dairy Service Co. Ltd., although at all times the account was carried under the fictitious name of Dairy Service Co. In such circumstances, judgment was rendered in favor of the defendants, and it is from that judgment that the instant appeal has been taken.

█ It is well-settled law that where a person has dealt with an agent with full knowledge of the name and the existence of a disclosed principal, or where the facts justify the conclusion that the person who has dealt with the agent did so with knowledge of the existence of such agency, and thereupon, in any transaction that may have occurred between the interested parties, exclusive credit was given to the agent instead of to the principal,—the recovery of a judgment, if any, based upon any such transaction (to which recovery the person who dealt with the agent may have become entitled), will be limited to the agent. (*Weaver* v. *Atlantian Construction Co.*, 84 Cal. App. 154 [258 Pac. 111]; *Geary Street etc. R. R. Co.* v. *Rolph*, 189 Cal. 59 [207 Pac. 539]; *McDevitt* v. *Chas. Corriea & Bros.*, 70 Cal. App. 245 [233 Pac. 381]; *Ewing* v. *Hayward*, 50 Cal. App. 708 [195 Pac. 970].)

█ In the face of the evidence and the findings of fact made by the trial court,—which findings were amply supported by the evidence,—it becomes manifest that the judgment should be affirmed. █ But the appellant urges the point that because (as it asserts) the articles of incorporation of Dairy Service Co. Ltd. failed to expressly authorize it to engage in the business of selling or "renting" milk bottles, all the stockholders of the corporation became personally liable for the debt which was incurred by such corporation in that regard. It may be conceded that in special circumstances, as for example, where a corporation engages in a business which by statute it is expressly forbidden to transact, a resultant liability on the part of its stockholders may ensue. In the instant case, the evidence indicates neither any such situation, nor anything akin to it. Besides, the appellant fails to point out either with exactness, or at all, in what respect the powers of the corporation, as outlined in its articles of incorporation, were lacking with reference to the transaction of a business of the nature of that in which

it was engaged. Indeed, the broad and general language employed in its articles of incorporation in describing or specifying its powers would seem clearly to include not only the particular business indicated by its corporate name, but as well "To conduct business, have one or more offices, and purchase, mortgage, lease, hold and convey real and personal property or any asset or interest therein in any part of the world, . . . " In addition thereto, the corporation was authorized "To make and perform contracts of any kind and description and in carrying on its business or for the purpose of attaining or furthering any of its objects; to do any and all things which a partnership or a natural person could do and exercise and which now or hereafter may be authorized by law."

But even if technically the corporation might be considered lacking in express charter authority to conduct the business of selling or "renting" milk bottles, in the absence of any prohibitory statute by which the corporation was expressly forbidden to engage in business activities of the nature of that which here is the subject of inquiry, no liability would result to the stockholders of the corporation by reason of the fact that, in the respect suggested by the appellant, it had exceeded its corporate powers. That such is the general rule is attested by the decision in the case of *Tennessee Automatic Lighting Co.* v. *Massey,* (Tenn. Ch. App.) 56 S. W. 35, wherein in part it was said:

"As to the first position, if the hotel company was properly incorporated, its subsequently engaging in a business foreign to its charter duties would not render invalid the previous incorporation, though it might be ground for forfeiture at the suit of the state. Nor would the doing of *ultra vires* acts by a corporation render the members of the corporation personally liable for such acts. (*Searight* v. *Payne,* 2 Tenn. Ch. 175, 178, 181.) If such liability existed it would be a perilous thing to hold stock in any corporation. Persons who deal with corporations must take notice of their powers (*Elevator Co.* v. *Memphis & C. Ry. Co.,* 85 Tenn. 703, 705 [5 S. W. 52, 4 Am. St. Rep. 798]), and if they make a mistake, and enter into *ultra vires* contracts with corporations, they cannot call upon the stockholders to make good such contracts out of their private estates." (See, also, vol. 6, Thompson on Corporations, p. 664.)

Since all other questions presented on the appeal are dependent upon a decision in favor of the appellant on the questions to which attention hereinbefore has been directed, it follows that such additional questions are unnecessary of consideration.

The judgment is affirmed.

York, J., and Doran, J., concurred.