[L. A. No. 15620.   In Bank.—June 17, 1936.]

BANK OF AMERICA NATIONAL TRUST AND SAV-
INGS ASSOCIATION (a   National Banking Associa-
tion), Appellant, v. GEORGE E. CRYER et al., Re-
spondents.

Edmund Nelson, Howard Waterman, Freston & Files, Ralph E. Lewis and Louis Ferrari for Appellant.

George E. Cryer, *in pro. per.*, R. Alston Jones, Hurt, Farner & Hurt, Nichols, Cooper & Hickson and John A. Jorgenson for Respondents.

WASTE, C. J.—This is an action against several stockholders of the Blue Bird Furniture Manufacturing Company to enforce payment of the respective amounts alleged to be due on their statutory liability for certain debts of the corporation incurred prior to the repeal of the statute imposing such liability. Judgment went for the defendants on the first cause of action and for the plaintiff on the second cause of action. Plaintiff and certain of the defendants appeal from that portion of the judgment adverse to them.

On May 29, 1923, one Erma Blacksmith, who was then employed as secretary to the president of the Blue Bird Furniture Manufacturing Company, executed a mortgage in favor of plaintiff's predecessor in interest to secure a loan of $125,000 and a further loan subsequently to be made. At a later date, August 11, 1925, an additional sum of $50,000 was loaned on the security of the mortgage. The evidence

indisputably discloses, and the trial court found, that in arranging these two loans and in executing the notes and mortgage incidental thereto, Erma Blacksmith was acting as the agent of the corporation. In fact, the property mortgaged was owned by the corporation and almost immediately after the execution of the mortgage was deeded back to the corporation. It was also found that the proceeds of the loans were paid to the corporation and employed by it in the conduct of its business. All interest payments on the loans were made by the corporation. In short, the loans were handled through an agent solely for the convenience of the corporation. The evidence is also uncontradicted, and the trial court found, that the mortgagee, plaintiff's predecessor in interest, was apprised of the true situation and was fully cognizant of the fact that Erma Blacksmith was acting as the agent of the corporation.

At this point we pause to state that it is neither alleged nor proved that any of the defendants owned stock in the corporation at the time of the execution of the mortgage or the making of the two loans mentioned. However, on April 23, 1930, the corporation requested of plaintiff an extension of one year on the notes for which the security had been given. In the communication to plaintiff the corporation reviewed the facts as to the execution of the Blacksmith notes and mortgage, recited that title had been vested in Erma Blacksmith "for the purposes of convenience" and promised to pay the amount of the notes in the following language: "The undersigned corporation also covenants and agrees to pay or cause to be paid by or in the name of the mortgagor in said mortgage named, the principal and interest of the promissory notes secured thereby on or before the date of the extended maturity thereof." The extension was granted by plaintiff and the notes not having been paid within the extended period, this action was commenced on March 7, 1933, against the defendants who, though apparently not stockholders at the times of the execution of the notes, had become and were such at the time of the "guaranty" thereof by the corporation.

In the first cause of action the plaintiff seeks to recover from each defendant his proportionate share of the deficiency remaining after foreclosure of the mortgage. ■ It is, of course, well established that the liability of a stockholder,

under our former statute, was limited to a proportionate share of the debts or obligations of the corporation *contracted or incurred during the time he was a stockholder* and did not exist as to corporate debts or obligations contracted or incurred before he acquired the status of stockholder and no subsequent acknowledgment or promise by the corporation, whatever its form, could make one liable who was not a share owner when the debt was incurred. These principles are stated and supporting authorities are cited in 6A California Jurisprudence, 1000–1008, sections 567–569.

In substance, it is the plaintiff's theory in support of its first cause of action that the corporate liability for the indebtedness represented by the two notes above described was contracted or incurred not as of the times of the execution of the notes, at which times the defendants apparently owned no stock, but rather as of the time of its guarantee of the notes, approximately seven years later, when they were stockholders. This contention is untenable.

As we have already stated, the loans giving rise to the indebtedness were as a matter of "convenience" made to an agent of a disclosed principal. At the time the money was advanced and the notes therefor executed, it was known to the creditor, plaintiff's predecessor in interest, that the maker of the notes was acting as agent for the Blue Bird Furniture Manufacturing Company, which company actually received the money so advanced, employed the same in the conduct of its business and thereafter paid all interest instalments on such indebtedness. While some confusion and uncertainty existed in our early cases, it is now definitely settled in this state that a disclosed principal may be held liable on a contract made solely in the name of the agent. (*Pacific Ready-Cut Homes, Inc.,* v. *Seeber,* 205 Cal. 690, 696, 697 [272 Pac. 579].) The cited case quotes from the case of *Geary St. P. & O. R. Co.* v. *Rolph,* 189 Cal. 59 [207 Pac. 539], to the following effect:

"We are also of the opinion that the better reason, as well as the weight of authority, is against the proposition that the mere fact that the principal is known to the third person at the time he contracts with the agent prevents such third person from holding the principal liable on the contract made in the name of the agent: . . . That the principal is not liable in such a case if the circumstances, or the terms

of the contract, or the two combined, show an intent by the other party to take the agent as his debtor or obligor, in preference to the principal, is, as we have said, well established, and it is manifestly in accordance with reason and justice. In such a case the election takes place at the time of the making of the contract. But where no such election or intent appears, *and there is nothing more than a contract made in the name of the agent, knowing him to be such and with knowledge of the identity of his principal,* the case is, and should be, governed by the well-known principle that he who acts by another acts by himself, that the contract of the agent, within the scope of his authority, is in legal effect the contract of the principal. . . . An examination of the decisions on the subject shows that the idea that the principal cannot be held liable in cases where the third person, at the time of contracting, knew the principal and his relation to the transaction, arises from the unfounded assumption that, since the decisions holding the principal liable when the contract does not disclose his name or interest, refer to him as the 'undisclosed principal', the doctrine does not prevail when he is known. But this language was used because the principal was insisting, not that he is not liable when he is known, but that he is not liable when the contract does not on its face purport to bind him, or to be for his behoof or benefit. It is this circumstance that is referred to by the word 'undisclosed'. The principal would have no standing in court to say he is not liable when his authorized agent makes a contract purporting to be for him and the party taking it had full knowledge of the fact that it was for him. The liability when he is undisclosed does not arise from his not being known, although sometimes fraud from that fact is also involved, *but from the fact that the contract of his authorized agent, though not in his name, is really for his benefit and in his business.* Thus Mr. Mechem says: 'The principal is also liable on all informal contracts entered into on his account and by his authority and not expressly made on the agent's responsibility rather than the principal's. . . . Where a person is known to be acting as the agent of a disclosed principal, the presumption is that the principal and not the agent is to be bound.' (2 Mechem on Agency, sec. 1710; see, also, sec. 1717.) ''

■ This principle is determinative of plaintiff's appeal from the judgment in favor of the defendants on the first cause of action. In other words, the creditor, plaintiff's predecessor in interest, being aware of the fact that the loans were being made through the medium of an agent to a disclosed principal who intended to and did employ the same in the conduct of its business, paying all interest charges thereon, from the inception of the contract could have looked to and held the corporate entity liable for the indebtedness so incurred. There is nothing in the record showing an intent on the creditor's part to take the agent as his debtor or obligor, in preference to the principal. As stated in the case above quoted from, the mere execution of the contract in the name of the agent, knowing him to be such and with knowledge of the identity of his principal, is not indicative of an intent to accept the agent alone as the debtor or obligor. This being so, it necessarily follows that the corporate indebtedness was contracted or incurred at a time when the defendants apparently owned no stock in the corporation and they are not therefore proportionately liable for any part of said indebtedness. However, even if they had owned stock in 1923 and 1925, when the two loans referred to in the first cause of action had been made, their statutory stockholders' liability based thereon would have been barred long prior to the institution of this action in 1933. (6A Cal. Jur. 1026–1037, secs. 574, 575, and authorities there cited.) The subsequent guaranty of said indebtedness by the corporation in 1930, when the defendants were stockholders, could not serve to impose any liability on them or extend any liability that may have theretofore existed. (6A Cal. Jur., *supra.*)

■ In announcing our conclusion on this phase of the litigation we are fully aware of the effect of section 3099 of the Civil Code, which, in substance, declares that only persons whose signatures appear on negotiable instruments are liable thereon. The liability incurred by the corporation at the inception of these loans was not and could not be on the notes executed in the name of the agent alone. Our language in the above discussion was carefully framed to state that the corporate liability existed as to the indebtedness represented by the notes. This liability of the corporation, at the times of the making of the loans and prior to the written guaranty thereof some seven years later, is based on accepted

rules of *quasi*-contract and is the result of the legal effect of the benefits of the transactions having been received by the disclosed principal. The principle finds expression in 2 Mechem on Agency (2d ed.) 1319, section 1736, where, after stating the usual rule that persons dealing with negotiable instruments are presumed to take them on the credit of the parties whose names appear upon them, it is declared that "it is entirely possible, however, notwithstanding this rule, that an action may, in many instances, be maintained by the original creditor against the principal, not upon the note itself, but upon the consideration for which it was given". To the same effect see *Coaling Coal & Coke Co.* v. *Howard*, · 130 Ga. 807 [61 S. E. 987], and other cases cited in the annotation thereof in 21 L. R. A. (N. S.) 1071, 1074. The plaintiff here stands in the shoes of but acquired no greater rights than its predecessor in interest.

Our conclusion also finds support in the Restatement of the Law of Agency, section 152, wherein it is stated that while "a disclosed or partially disclosed principal is not liable *as a party* to a negotiable instrument in which he is not named", nevertheless, in comment "C" appearing under said section, it is declared that "he may be subject to *quasi*-contractual or other liability, as where he has received the benefits of the contract". See, also, section 141, subdivision b.

From what has been said, it necessarily follows that the trial court was correct in entering judgment for the defendants on the first cause of action. ▉ We are not bound by the reasons assigned by the trial court for its conclusion (2 Cal. Jur. 808, sec. 476), but we may, pursuant to the authority conferred by section 956a of the Code of Civil Procedure, make such additional findings under the evidence as may be necessary to affirm the judgment. The findings and conclusions of the court below as to the action having been prematurely commenced and as to the invalidity of the corporate guaranty may be, and are, therefore, disregarded as surplusage. In lieu thereof, the findings of fact and conclusions of law are amended by adding thereto the following: That as a result of the execution and delivery of the notes and mortgage described in finding No. III, by Erma Blacksmith as the agent for the Blue Bird Furniture

Manufacturing Company, and the receipt and use of the proceeds by said company, as described in finding No. IV, the company became liable to the creditor, not on the notes but for the indebtedness represented thereby, as of the time of the making of the loans.

Consistently, the conclusions of law are also amended to provide as follows: The plaintiff is not entitled to judgment on the first cause of action for either of the following two reasons:

1. There is neither allegation nor proof that any of the defendants were stockholders in the company in 1923 or 1925 when the corporate indebtedness was incurred; and

2. Any stockholders' liability based thereon, even if it existed as to some or all of the defendants, had become barred by the running of the statute of limitations prior to the commencement of this action.

Our conclusion makes it unnecessary that we here consider other contentions of the parties incidental to the propriety or impropriety, as the case may be, of that portion of the judgment on the first cause of action.

As stated at the commencement of this opinion, certain of the defendant stockholders noticed an appeal from that portion of the judgment on the second cause of action wherein they were respectively adjudicated to be liable to the plaintiff for their proportionate share of an indebtedness incurred by the company in its own name when it borrowed $20,000 on July 25, 1930, at which time the several defendants owned stock in the company. The indebtedness alleged in the second cause of action was contracted and incurred by the company within three years of the commencement of this action.
The defendants who have appealed from that portion of the judgment adverse to them on the second cause of action urge that the court below was without authority to proceed because the amount involved was below the jurisdictional limit of said court. We find no merit in the contention. As originally filed, the complaint sought recovery from the several stockholders in varying amounts, all within the jurisdictional limits of the trial court. The fact that ultimately judgment was entered against one or more of the several stockholders for an amount below such jurisdictional limit is immaterial. Moreover, this identical contention was advanced in an ap-

plication for a writ of prohibition heretofore filed with and denied by this court.

The judgment is affirmed.

Shenk, J., Seawell, J., Curtis, J., and Thompson, J., concurred.