[Civ. No. 10050. Third Dist. May 26, 1961.]

STANDARD OIL COMPANY OF CALIFORNIA (a Corporation), Respondent, v. ROLAND C. DONEUX et al., Defendants; C. E. GROSJEAN RICE MILLING COMPANY, Appellant.

Bronson, Bronson & McKinnon for Appellant.

Blewett, Blewett & Garretson for Respondent.

SCHOTTKY, J.—C. E. Grosjean Rice Milling Company, a corporation (hereinafter referred to as Grosjean), appeals from a judgment in favor of Standard Oil Company of California, a corporation (hereinafter referred to as Standard),

in an action brought by the latter to recover the balance due for rice allegedly sold to the former.

Standard sold rice grown on certain land it owned to one Roland C. Doneux, a licensed grain dealer, after it had accepted Doneux's bid. His bid was based on a price given to him by Grosjean. After a warehouse receipt for the rice had been delivered to Doneux by Standard he forwarded it with a sight draft attached to Grosjean. Grosjean paid Doneux for the rice, took delivery, milled it, and sold it. Doneux never paid Standard.

Standard commenced this action on April 23, 1956, against Doneux and several Does. The third cause of action alleged that in the purchase of the rice Doneux was acting as an agent for and as a representative of Doe One. Grosjean was served as Doe One on June 11, 1956. A judgment pursuant to a stipulation was entered against Doneux on July 18, 1956. This judgment was in excess of the amount due for the rice alone as the complaint also included a separate count for a crop of corn sold to Doneux. Grosjean's answer was filed on September 21, 1956, and it denied that Doneux was its agent. A partial levy on the judgment against Doneux was made on December 4, 1956, and on December 18, 1956.

After numerous postponements the case against Grosjean was set for trial on March 11, 1959, and on that day counsel for Grosjean made a motion to dismiss the action as to Grosjean upon the ground that an election had been made and a judgment entered against Doneux as the agent of Grosjean. The date of the trial was again postponed, and on April 15, 1959, the court ruled that it would reserve its ruling on the motion "pending the development of the precise facts at trial," the order stating that "if it appears that an agency relationship involving an election is involved, then Defendant Grosjean having made an appropriate motion has avoided the waiver rule and the court will proceed to dispose of the matter appropriately."

The case finally came on for trial on June 12, 1959, and the court found in substance as follows: that during the month of November 1955, and for many years prior thereto, defendant Doneux was the agent of defendant Grosjean for the purpose of buying crops of rice for Grosjean; that on November 15, 1955, Doneux, while acting as agent for Grosjean, submitted a bid on behalf of Grosjean to purchase the rice crop of Standard, which bid was accepted and the warehouse receipt for the crop in storage was delivered to Doneux; that Grosjean

took possession of the rice and paid insurance and storage charges after the warehouse receipt was delivered to Doneux; that it is not true that Standard extended exclusive credit to Doneux, or ever agreed to look to him alone for payment for said crop, or that Standard elected to recover the purchase price of the rice crop from the agent Doneux; nor that it elected to release the principal, Grosjean, from liability for payment of the purchase price of said rice crop.

The court found further ''That STANDARD OIL COMPANY OF CALIFORNIA is entitled to hold a judgment against either ROLAND C. DONEUX, agent, or C. E. GROSJEAN RICE MILLING Co., principal, and is now entitled to elect which of the said defendants shall be liable on a judgment for the purchase price of the rice.''

The court made the following conclusions of law:

''1. IT IS ORDERED that plaintiff STANDARD OIL COMPANY OF CALIFORNIA, a corporation, have judgment against GROSJEAN RICE MILLING Co., a California corporation, for the sum of $12,527.11, provided an election is on file by STANDARD OIL COMPANY OF CALIFORNIA electing to hold the principal, C. E. GROSJEAN MILLING Co. and not to hold the agent ROLAND C. DONEUX for the sum of $12,527.11.

''2. IT IS FURTHER ORDERED that any judgment heretofore entered against said ROLAND C. DONEUX in the above action be reduced by the sum of $12,527.11, upon the filing herein of the election by STANDARD OIL COMPANY OF CALIFORNIA and the entering of a judgment for said amount against defendant C. E. GROSJEAN RICE MILLING Co., a Corporation.''

Standard having filed its election to hold the principal, Grosjean, judgment was entered against Grosjean in accordance with said conclusions of law. The judgment ordered that the judgment heretofore entered against Doneux be reduced by the sum of $12,527.11.

The major contention urged by appellant is that the judgment against Doneux constituted an election releasing Grosjean from liability. ▓▓▓ The basic rule is that an undisclosed principal when discovered is liable for the authorized contracts of his agent. (*Central Savings Bank of Oakland* v. *Coulter,* 72 Cal.App. 78 [236 P. 956].) But there is a corollary to this rule. ▓▓▓ Once the third party has discovered that there is an undisclosed principal he may be required to hold either the agent or the principal, for the liability is alternative. In the case of *McEwen* v. *Taylor,* 106 Cal.App.2d 25 [234 P.2d 754], this court said at page 29:

"As we have stated, the entry of judgment against Voudouris occurred simultaneously with the entry of judgment against appellant, and the judgment in form is joint and several against both. The contention that when respondent caused the entry of the default of Voudouris he thereby elected to hold him only and not to proceed further against the undisclosed principal is disposed of by the cases of *Klinger* v. *Modesto Fruit Co., Inc.*, 107 Cal.App. 97 [290 P. 127], and *Sears* v. *Whiston*, 139 Cal.App. 682 [34 P.2d 818]. In such actions it is true that in theory at least the plaintiff cannot hold both the agent and the undisclosed principal and must upon demand of the principal or the agent elect which he will hold. This election, however, is not required until the plaintiff has obtained sufficient knowledge as to the status of the alleged principal so as not only to enable him to make an intelligent election, but to require him in fairness to do so. Since the default is entered upon failure to appear in response to service of summons and complaint it would ordinarily be true that the plaintiff at that time had no such knowledge. At that point in the proceeding the proof is not in and the plaintiff is in no better position to make an election than at the time of filing the complaint. As stated in *Klinger* v. *Modesto Fruit Co., Inc.*, the proper time for an election to be made is before entry of judgment but after, in cases of conflict, the issue of agency or none has been settled by the findings. Said the court therein at page 103:

" '. . . It is illogical and unjust to require a creditor on his own initiative and without a demand or motion to make an election as to whether he will seek to hold an agent or his principal liable upon an obligation. This would require him to speculate upon the decision of the court regarding the relationship of the principal and agent. An election before the rendition of judgment might not accord with the court's view of the relationship as disclosed by the evidence. A premature choice might result in an erroneous selection and a total loss of a valid claim. Conflicting evidence regarding the liability of the agent or his principal would require the affirmance of a judgment at variance with the election. The uncertainty and injustice of an erroneous election is apparent. The law will not require a litigant to gamble on his remedy. It would seem to be a wiser and better rule of procedure, where there is an issue or a doubt as to the relationship of a principal and agent, to require a motion for election to be made, and even then to hold the motion under advisement until the liability and

relationship of the respective parties has been determined; and then render judgment accordingly. If both are found to be liable because of the relationship of agent and undisclosed principal, then the court should direct an election to be made and enter judgment accordingly. If the demand for an election is not raised by demurrer or motion during the progress of the trial by the party for whose benefit this doctrine is intended, it should be deemed to have been waived.' We conclude that the entry of default against Voudouris did not constitute an election.''

In the instant case a judgment by stipulation was entered against Doneux after service of summons but before Grosjean answered, before a demand for election was made, and before the issue of agency was determined. ▮ It is clear that if the agent were sued before knowledge of the identity of the principal were ascertained a judgment later could be obtained against the undisclosed principal (Rest., Agency 2d, § 210 (2)), because an election cannot be made where the third party has no knowledge of the principal. (Williston on Contracts, § 289, n. 2.) ▮ It is also clear that if the principal and agent are sued in the same action and a default is entered against the agent, but not a judgment, an election, if demanded, need not be made before the issue of agency is determined. (*McEwen* v. *Taylor, supra.*) ▮ It is also clear that an undisclosed principal is discharged from liability on a contract if with knowledge of the identity of the principal the third party recovers a judgment against the agent. (Rest., Agency 2d, § 210 (1).)

While there appears to be some confusion in the decisions as to the doctrine of election and its application, we believe that the case of *McEwen* v. *Taylor, supra,* states the rule that should be followed. Said the court at page 29: ''This election, however, is not required until the plaintiff has obtained sufficient knowledge as to the status of the alleged principal so as not only to enable him to make an intelligent election, but to require him in fairness to do so. Since such default is entered upon failure to appear in response to service of summons and complaint it would ordinarily be true that the plaintiff at that time had no such knowledge. At that point in the proceeding the proof is not in and the plaintiff is in no better position to make an election than at the time of filing the complaint.''

▮ It was a question of fact in this case for the trial

court to determine whether the plaintiff had taken a judgment against the agent before plaintiff had acquired sufficient knowledge as to the status of the alleged principal so as not only to enable him to make an intelligent election but to require him in fairness to do so. The trial court found that no election was made and this finding is supported by the record. At the time the judgment was entered against Doneux, Standard did not know what the proof would be on the issue of agency; it did not know whether Grosjean would admit or deny the agency; it did not know what the finding of the trial court would be on the issue. While there can be fact situations which would compel a finding that an election was made, this is not one of them. It was only after the proof was in and the decision made that Standard could be required to elect, and the judgment against Doneux would not bar a subsequent judgment against Grosjean. (Rest., Agency 2d, § 210.)

 Grosjean also contends that the court had no power to modify the judgment against Doneux and enter judgment against it. However what the judgment did was to order that the judgment theretofore entered against Doneux should be reduced by the amount of the judgment in favor of Standard against Grosjean. If, as we have concluded, the order of the court permitting Standard to make an election was one which is supported by the record and the law, we are unable to understand how Grosjean is entitled to raise the point.

 Grosjean also claims that the action against it was barred by section 2335 of the Civil Code which provides that if exclusive credit is given to an agent by the person dealing with him, his principal is exonerated by payment to the agent before receiving notice of the creditor's election to hold him.

Paraphrasing Mr. Justice Peek in *Wahyou* v. *Kiernan,* 145 Cal.App.2d 443 [302 P.2d 638], this rule applies only when there are intervening circumstances such as in *Rigney* v. *De La Salle Institute,* 10 Cal.App.2d 492 [52 P.2d 579], which would warrant a conclusion that exclusive credit had been granted to the agent. In the Rigney case the creditors testified exclusive credit had been given to the agent and they gave the agent waivers of liens which permitted him to secure payments. These circumstances compelled the appellate court to deny recovery against the alleged principal. In this case there are no such circumstances which require a finding of exclusive credit. All we have is the usual extension of credit to an undisclosed principal, and the general rule permitting recovery

from the principal would be applicable. The finding of the court that Standard did not extend exclusive credit to Doneux is supported by the record.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied June 22, 1961, and appellant's petition for a hearing by the Supreme Court was denied July 19, 1961.